Good morning, everyone. Before we begin, I just would like to thank Judge Richard Lynn from the Federal Circuit for coming to join us and helping us out with our docket. Thank you very much, and it's a pleasure to have you. We will take the cases up in the order in which they appear on the docket. The first case is submitted on the briefs, and that is Salinas v. Barr. So we will take up Granados v. Barr. Counsel, you may proceed. Good morning. May it please the Court. My name is Myrna Alvarez, and I represent the petitioner, Jesus Granados-Landros. If I could, I would like to reserve two minutes of my time for rebuttal. This case is about domestic violence. This case is about pervasive, physical, and emotional abuse of a stepson by his stepfather. We all know too well the long-lasting scars of this type of abuse and what it leaves on the abused and the control that the abuser has over his victims. The petitioner was trained to feel powerless under these circumstances. Jesus suffered for many years from this type of abuse at the hands of his stepfather, Luis Granados, while living in Mexico and then here in the United States. The immigration judge found Jesus and his mother, who testified at his hearing, credible at the administrative record 36. The IJ also found that Jesus had proven by way of testimony and supporting evidence that he had suffered past persecution. The IJ stated that the applicant has presented evidence that he was selectively chosen to be beaten by his stepfather for many years, while the biological children were only spanked by the stepfather. Further, the applicant's mother believed that the reason the stepfather beat the applicant was that the applicant was not biologically related to the stepfather. The Court finds that the applicant has met his burden of proof to show that the past persecution was on account of his membership in a particular social group of stepchildren or non-biologically related children. The examples of emotional and physical abuse provided by Jesus and his mother are many. Jesus was woken up from his sleep by beatings at the hands of Luis Granados when he was just two and a half years old. That set the administrative record to 68. Jesus was beaten at least once a week for as long as he could remember. His stepfather would come home drunk or on drugs and beat him. It was every Friday he testified. He was beaten with a cable, he was beaten with fists, and he was kicked. At one point, he was even tied to a chair and had his mouth taped shut and was forced to watch his stepfather beat up his mother. He was told many times by his stepfather that he hated him, and he still believes that he hates him. Jesus was threatened with death for causing his mother to leave his stepfather. And even after the beating stopped when he was 17 years old, his stepfather still insulted him, so that still continued the emotional abuse. That set the record at 320. Once the Court found that Jesus had proven past persecution on account of a protected ground, the immigration judge went in to analyze as to whether there is sufficient evidence to rebut the presumption that the applicant faces a clear probability of future harm. This turn in the immigration's decision is extremely important. In essence, what the immigration judge is stating goes to the analysis laid out in 8 CFR 1208.16b. By beginning to analyze the requirements of proof after shifting the burden away from Mr. Granados, the immigration judge is conceding that Mr. Granados' past persecution is related to his fear of future harm. That's the same analysis that this Court gave in its recent case, about two years ago, in the Bringas-Rodriguez case. This Court has made clear in Bringas- Rodriguez that this is a proper analysis under the CFR regarding withholding or removal. Although it was an asylum analysis, it's similar in its structuring. The IJ also found substantial evidence to support the conclusion that the presumption was rebutted based on fundamentally changed circumstances. What are your comments about that? Your Honor, he based it solely on the human rights report that was submitted by the government, and it was based completely on conjecture. The reasons that he gave for that were that... Wait a second. Are we looking at the BIA opinion or the IJ opinion? Because I think at this point we're reviewing the BIA opinion. Well, Your Honor, in Bringas-Rodriguez, this Court indicated that you were relegated or just restricted to the BIA decision if the BIA adopts its own decision. And here, the BIA did not adopt its own decision. It agreed with the IJ. And because... Right. No, no. I think that's precisely backwards. If we look at the IJ decision, if the BIA decision adopted the IJ decision here, it appear... And this is such a minimal point, because I think Judge Lynn got to the heart of this thing, which is, can the government rebut the presumption that has arisen as to future persecution by pointing to changed personal circumstances alone? Or is it required to prove other things, such as country conditions, as well as how those personal circumstances may bear on the petitioner's fear? In other words, simply because he's above 17 and his parents are divorced, does that — how does that demonstrate that his stepfather still isn't — doesn't have it out for him, and that his fear is unfounded, that his stepfather will still brutally attack him? Your Honor, the point that was made in Bringas-Rodriguez — and I'll revert back to that case — is that the BIA stated in its decision that because the individual who's being persecuted was no longer a child homosexual, or because somehow he now became an adult, that that wasn't going to be a reason that he could fear future harm, because it was unrelated. This analysis is a little bit different, because the IJ stated that the presumption had been rebutted, but he didn't go into a clear analysis as to how the case was rebutted or how the presumption was rebutted. He didn't really shift the burden to the government, and all the government provided was a human rights report. And the human rights report actually cut against the government's argument, because the human rights report included that there were extrajudicial killings in Mexico at that time. Are you taking the position that to establish a fundamental change in circumstances, the government must show not only personal changes in circumstances, but also some change in — I believe that the government has to show just enough of a change, and it could be all of them. It could be cumulative. It could be based on — But you're not answering my question. I mean, I didn't see any argument in your brief that raised the question of whether the government had failed to rebut the presumption because it only showed personal changes. It did not show any change in country conditions. Well, I didn't argue that it was personal change. What I argued was that their evidence was insufficient, and they didn't — they didn't show that there was personal change. That was — that was — that came out in the testimony, and that was conjecture by the I.J. So he based his denial not on what the government had presented. And I see that — I'd like to reserve the rest of my time, Your Honors. All right. Thank you. Thank you. Good morning. May it please the Court. My name is Craig Newell, and I'm here on to show the record evidence compels the conclusion that he would more likely to not be persecuted by his former stepfather on account of a protected ground upon return to Mexico. That's regardless of the procedural posture under which we look at this case. If we first turn to how the — the immigration judge found that there was past persecution on account of the stepchild protected ground and — but Does the government challenge that finding? Does the government challenge the definition of the social group? Does — no, because the board did not. The board went along with the immigration judges. Notice that there was some lack of clarity because the immigration judge said how there didn't seem to be evidence of the social distinction of that group. But also then, it seemed like the immigration judge did both. He assumed that this particular social group existed, but also found that it was established. But in terms of whether there is such a social group because this went up to the BIA, I looked to the BIA opinion, and they seem to say if. They don't say one way or the other. And is the government taking a position as to whether or not this is a social group? No, we are not. The board — because this withholding and removal claim could be resolved on other elements of the claim. So the government's simply not taking a position on the point? Correct. This court does not need to get into that issue. It can be resolved. So in other words, you're willing to say for purposes of the appeal now and the petition now in front of us, we are willing — we should assume that it is an established social group? For the purposes of this appeal, yes. And to look towards the other elements of the claim that were not established. So if we look at the immigration judge's finding, which the board adopted about the fundamental change in circumstances, that can be shown through a change in personal circumstances. The regulations were changed, I believe, in the early 2000s from it being rebutted through a change in country conditions as a whole to something that could be fundamental to the person, him or herself. And here we do have that fact. Since there's no longer any formal or informal step-parent relationship here, the horrible abuse Mr. Granato suffered — At the time he was in front of the I.J., how long had it been since the last beating by the stepfather? He was before the I.J. in 2017. It was then the late 90s when he was around 17 years old. We're talking a good number, maybe almost 20 years. With Luis, he lived with the former stepfather for another seven years into his young adulthood and did not suffer any more abuse during that time period. And then in 2005, the stepfather moved out and then he returned to Mexico a few years thereafter. Despite some threats from the stepfather during this time period, no further abuse was shown. And so those fundamental facts here, they support both the showing of a fundamental change in circumstances to rebut it, and they also support that there's not a sufficient showing of a likelihood that this former stepfather would harm him. Is the government relying on just the fact that his personal circumstances have changed, or is the government relying on both the personal circumstances and there was no evidence of subsequent beatings or anything else in addition? I mean, are you staking your ground on the government can satisfy the change in circumstances based on personal circumstances alone, or do you believe there's more here? I think all those facts go to the change in personal circumstances. Did the government prove, though, that those changes would change the motive of the stepfather to still attack Granados? I mean, was there that link made to, you know, because his fear could still be well-founded if he still feared, even as an adult, that this man hated him so much and had persecuted him, had suffered so much in past persecution that if he went back and he was anywhere near this man, he would try to kill him, since he had tried to kill him so many times before. Right. So the change, the changes consist of many things here. When he was horribly abused as a child in Mexico, it seemed to be purely the fact that Mr. Granados was not one of his own biological children who he did not treat in such a way. Right. He was singled out for that, right? He was singled out from the other children. He was singled out for that. And now, though, the claimed fear of what he fears is more, is one of retribution for certain acts he took as a teenager and young adult convincing his mother to move out. He believes there's some lingering animosity to this 1996 arrest that he caused. But at bottom, unlike asylum, which has both a subjective fear element and an objective fear element, this is withholding of removal that just looks at objectively. Is it more he did in the past? And you cannot say that based on these facts. The fact that Mr. Granados... But it's the government's burden of proof, right? For the fundamental change. Yeah, right. That's the government's burden of proof, right? Yes, for the fundamental change. And that burden can be met by whatever evidence is in the record. The government doesn't need to re-proffer independently a certain amount of evidence to rebut it. In certain circumstances, it may have to, if it is, say, a changed country conditions claim, and there's no evidence of changed country conditions here. But here, Mr. Granados' testimony bears out both the past persecution and the fundamental change that shows he no longer has this likelihood of being persecuted in the future. So what do we do in dealing with his testimony, the petitioner's testimony, that he actually fears the father because of things that have happened? So that, yes, there are changed circumstances in that he got older, and after he passed 17 and was living in the house, the stepfather didn't beat him anymore. But there now seem to be reasons adduced by the petitioner in terms of retribution that he has now some fear. And perhaps he has the fear, perhaps the actions that he fears are in part because he's not the natural child. He's the stepchild. He's always been the stepchild, and the father has never particularly liked him. And maybe if the natural children had done the same things, we wouldn't get the same answer. How do you respond? Okay. I think there's three points. The first is his subjective fear is not pertinent to this inquiry. The second one is what I believe you're suggesting, Your Honor, is there's some kind of mixed motive here, that the step relationship plus these grounds are not a basis for withholding? You see, there might be. That is to say, what I'm suggesting is if he were the natural child who had done these things, that the stepfather might not react in quite the same way. And for withholding, all we need is a rather than the central reason. Right. But here, it was never alleged as this ground. He is no longer a member of that stepchild. Well, wait a second. That's another area I quarrel with you about, because this is immutable. He will never, ever be the biological child of his stepfather. That is immutable, and that's one of the reasons why I believe that I.J. found this particular social group. That's one of the characterizations for particular social group. He will always have that diminished status in the eyes of his stepfather. That will never change. That was the point that I think was made in Bringus Rodriguez, and that your the logic behind that. But if I may just. Yes, go ahead. Please answer the question. Okay. The first is, as it pertains to a stepchild, which is there's a difference between the biological or adopted child. That stepchild connection can be severed because it's based solely on the parental relationship of the biological parent and the spouse of. So that has ended, and there's no evidence of such an informal parental relationship continuing after 2005. There's nothing. Are you saying the divorce made him no longer the non-biological child of the stepfather? I see that the problem is the non-biological part attacked onto the stepchild part. And not to belabor this, but I think if the court has concerns about that part of the decision or the analysis, it does not need to look into it, because in the end, there's been this fundamental change in circumstances that rebutted the presumption. There has been the numerous changes, the fact that the abuse ended, that there's no likelihood that there's no showing of a likelihood that his former stepfather. Now you're putting the burden back on Petitioner to make the showing of a likelihood. I'm saying that that likelihood is part of why the presumption has been rebutted. The evidence is all there, and the presumptions are applied and rebutted through the immigration judge's analysis. And there does not need to be this back and forth. And now on judicial review, it's all whether Mr. Granados can show that the Thank you. And I'm just wondering, I'm not going to take this from your time, but thank you very much, counsel. Can you just make it so that red light doesn't blink? All of a sudden, we've got flashing lights. It takes away from concentrating on the argument. All right, thank you. Your Honors, one very important fact that the government fails to point to is that Mr. Granados, the petitioner, has the name Granados. His father obtained unlawfully a fraudulent birth certificate for him, and he'll never be able to change that. So that would make the argument that the fact that he's a stepchild I'm not sure I understand that. He can't change his name? Well, he could, but his name I think he can, right. This court is referring to him as Mr. Granados. He can't change the fact that this has been his name, but he can certainly change his name. It has been his name, and it has been his name for more than 30 years now. The other point that I wanted to make is that both the BIA and the IJ in their decisions call Luis Granados, the petitioner's stepfather. So it's clear that society never erases that point. They continue to refer to people, even if their parents have divorced, as the stepson, the stepfather. How realistic is his fear of harm from the stepfather? How realistic is the fear now? Your Honor, I believe that if you look at the record and the testimony, the type of harm that the petitioner suffered at the hands of his stepfather would instill fear in anybody for a lifetime. No, I'm asking not subjective fear, but how reasonable is the fear that he actually will suffer harm? Well, recently, if you look at the record, the petitioner's maternal grandmother sent a photo to the family showing that Luis Granados lives with her now. They have members of the family who are connected to both parties, the petitioner and his stepfather. He has half-siblings who have a good relationship with Luis Granados who could easily tell him where he is because the petitioner's mother continues to have a good relationship with all of her children. So the argument that the government makes that there's been no contact really undermines the record. What are we supposed to do with the fact that the abuse stopped when he becomes large enough to look like a full-fledged adult? That is to say, the stepfather picks on him when he's old enough to stick up for himself, the stepfather quits doing it. Well, he quits beating him up. Presumably, we could look at the record and see, well, he's almost a man. He's grown, so he can't beat him up. But persecution is not based on size. It's not based on who's bigger, who's smaller. You can have a woman abuse her husband. No one ever discusses, well, is she stronger than he is? So that, I don't think, is really relevant. The fact that if you want to harm someone, you can get a gun to do it. You can get a bat to do it. You can hire someone else to do it. And the record is replete with the types of violence that Luis Granados has committed on his child. And he's beaten up pregnant women. Right, but what's the evidence of reasonable fear of future persecution? I mean, you're saying there were the threats. The threats, country conditions, past actions by Luis Granados where he's committed crimes of impunity because he has family members who are in government. He has a cousin or an uncle who's a police officer, who's a criminal defense attorney. He has connections. And that's the reason he's been able to get away with it in the past. And that's why the petitioner and his mother both fear for the life of the petitioner. And are those changed country conditions or those have been all along? I believe they've been all along. I mean, they testified credibly to those past country conditions. But we did submit country conditions at the time of the hearing that showed that corruption was still prevalent in Mexico. And that even though Mexico has tried to that it has not been eradicated. And I think that that point was also made in Bring Us Rodriguez. That eradication is really the point here. And it has not been eradicated. And so, thank you. Thank you very much, counsel. Granados V. Barr will be submitted and will take up United States v. Burns.
judges: Wardlaw, W. Fletcher, Linn